## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal No.  18-cr-146** |
| **ISABELLE GARCIA,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Defendant Isabelle Garcia engaged in a multi-year scheme through which she embezzled over $300,000 from the private club where she worked as the controller.  Garcia abused her position of trust and used her access to the club's financial accounts to enrich herself by, among other things, issuing checks and initiating wire transfers from the club's accounts without authorization, converting for her own personal benefit and use funds paid to the club by its members to support its operations.  The government agrees with the Probation Office that the applicable sentencing guideline range for the defendant is 27-33 months' incarceration and respectfully requests that the defendant be sentenced to 27 months' incarceration, three years of supervised release, restitution in the amount of $300,422.06, and be ordered to forfeit a money judgment in an equal amount.

## I.     FACTUAL BACKGROUND

On May 15, 2018, a grand jury returned a four-count Indictment charging Garcia with Wire Fraud, in violation of 18 U.S.C. § 1343, Bank Fraud, in violation of 18 U.S.C. § 1344, and Frist Degree Fraud, in violation of 22 DC Code §§ 3221(a) and 3222(a)(1).  On July 2, 2021, the defendant pled guilty to Count One of the Indictment, in which she is charged with Wire Fraud. These charges and the defendant's guilty plea stem from a scheme in which Garcia defrauded the

George Town Club ("GTC"), a private dining club located in the District of Columbia, of over $300,000 from 2006 to 2013.

In April 2006, GTC hired Garcia as its controller, giving her substantial control over the club's financial accounts. Garcia used her access to the club's operating and payroll accounts to embezzle just over $300,000 between December 2006 and September 2013. She wrote approximately 137 checks to herself from club accounts and initiated two electronic transfers to her personal account. All of the funds were deposited into a Bank of America account in her name. Garcia also used GTC accounts, through a mix of checks and electronic transfers, to pay over $80,000 to her personal credit card accounts. The charges on her credit accounts appear to be personal in nature. They included charges for hotels, restaurants, domestic and overseas travel, doggy day care, dining, gasoline, department stores, wine and spirits, restaurant equipment purchases in Pennsylvania, hardware store purchases, and utility payments in Pennsylvania.

In the late spring or early summer of 2012, Garcia contacted an individual who owned commercial property in Wilkes-Barre, Pennsylvania. Garcia told the individual that she intended to move to the area and open a restaurant. The individual agreed to rent the property to Garcia.

In May 2013, Garcia had asked GTC if she could work from home because she had breast cancer and needed chemotherapy treatments.[1] GTC agreed to let her work from home for half of her salary. In or about July 21, 2013, Garcia filed a claim for unemployment benefits with the District of Columbia Department of Employment Services. In that application, Garcia falsely stated that she was working part-time at GTC due to lack of work.

In September and October 2013, the GTC treasurer conducted a review of GTC's financial statements and discovered several suspicious payments to Garcia and to credit card companies.

---

[1] As Garcia has now admitted, she has never had cancer. PSR ¶ 75.

On October 167, 2013, the GTC president demanded information from Garcia about these and other suspect transactions.  In response, Garcia admitted payments were made from GTC accounts to her credit cards, apologized for her actions, and claimed, among other things, that she "had so many issues because of her disease" and had "lost perspective when [she] became sick and start [sic] fighting for [her] life."  PSR ¶ 28.  The next day, the GTC placed Garcia on unpaid administrative leave.  On October 24, 2017, Garcia told the president of GTC that she would repay the GTC by liquidating her assets and obtaining money from her friends.  To this day, she has not made any such payments.

During the very same month in which her embezzlement was uncovered by the GTC and Garcia lost her job, she opened a restaurant called Southside Bistro at the space she had rented in Wiles-Barre.  She also became a naturalized U.S. citizen.  Nonetheless, mere days after telling the GTC that she would repay the funds she stole and less than three weeks after becoming an American citizen, Garcia fled the United States and returned to France.

Shortly after arriving in France, on November 4, 2013, Garcia emailed the owner of the property where Southside Bistro was operating and notified him that she was leaving for France because her mother had a heart attack.  On December 19, 2013, Garcia sent an email to the individual stating that she was not coming back to the United States and was staying in France to be with her mother.

On January 26, 2014, Southside Bistro closed.  Garcia owed approximately $30,000 in payroll taxes, $160,000 to vendors, $120,000 in utilities, and $19,200 in rent.  Garcia also defaulted on a $200,000 loan from the Small Business Administration.

While living in France, Garcia took several international trips but never to a country with which the United States has an extradition treaty.  On October 19, 2019, Garcia traveled to

Morocco and, at the request of the United States, she was arrested. The United States submitted an extradition request on November 13, 2019, and Garcia was taken into custody by the FBI on November 5, 2020 and brought to the United States to face the pending charges.

## II.     SENTENCING CALCULATION

### A.  Statutory Maximum Sentence

For the crime to which he pled guilty, the defendant faces a maximum sentence of 20 years' imprisonment, three years of supervised release, a fine of not more than $250,000 or twice the pecuniary gain or loss, and a $100 special assessment.

### B.  Sentencing Guidelines Calculation

The government agrees with the calculation of the applicable voluntary sentencing guidelines contained in the Presentence Investigation Report, which is the same calculation to which the parties agreed in the plea agreement. Specifically, Garcia's offense level is 18 and her criminal history category is I, resulting in a guideline imprisonment range of 27 to 33 months.

## III.     ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that a sentence of imprisonment within the applicable guideline range is warranted.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness

Case 1:18-cr-00146-JDB   Document 29   Filed 10/08/21   Page 5 of 9


of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;  (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

### A.      The nature and circumstances of the offense support the recommended sentence.

The nature and circumstances of the offense demonstrate the defendant's clear criminal intent to engage in an extensive embezzlement scheme.  Garcia's embezzlement of over $300,000 from the GTC was not a one-time act that might be attributable to a singular breach of the trust placed in her by the club.  On the contrary, it was a multi-year scheme in which Garcia stole money from a small organization during a period in which it was suffering from financial difficulties.  She had ample opportunity to reflect on the wrongfulness of her course of conduct, and rather than put an end to her scheme, she chose to continue enriching herself at the expense of the club and its members.  Nor did Garcia confine herself to stealing from her victim using a single means.  Rather, she took money to which she was not entitled by writing checks to herself and third parties for her benefit, as well as by initiating wire transfers to similar accounts. Time after time, check after check, transaction after transaction, the defendant knew that what she was doing was wrong, and that it was a crime.

Calling the defendant's actions an embezzlement scheme does not quite capture the true essence of the criminal conduct.  Garcia did not simply steal hundreds of thousands of dollars; she

stole hundreds of thousands of dollars from a small member-supported club under financial strain. Garcia did not simply make the conscious, calculated decision to steal money repeatedly over a period of seven years; she made the conscious, calculated decision to abuse her position of trust to deprive of substantial resources a small organization whose mission she was entrusted to further. For this reason, Garcia's conduct was exceptionally selfish, callous, and egregious. Compounding the seriousness of the conduct is the manner in which the defendant attempted to conceal her scheme and her flight from prosecution. As one of the many ways in which Garcia defrauded her employer, Garcia falsely stated to her managers that she was suffering from and receiving treatment for an incredibly serious disease. She thereby preyed on the sympathies and good will of her superiors when, in fact, she was simply transitioning from one con to another as she set up a restaurant in another state.

The circumstances of the offense also evidence the absence of any mitigating circumstances of the defendant's embezzlement. The defendant did not steal the money out of selfless concerns, imminent needs, or the inability to earn the money through legitimate means. Indeed, the defendant was gainfully employed as the controller of the GTC and appears to have been before her work at the GTC as well. The offense also had a significant impact on the victim. As the club's Victim Impact Statement, attached as Exhibit 1, states:

> Garcia not only committed fraud, but almost brought ruin to a historic DC organization. In the wake of her schemes, she wreaked chaos for the members and devoted staff of the George Town Club, causing almost total financial devastation. Employees left their positions and a skeleton board of volunteers was left to clean up her very substantial mess. The fact that the saga continued for years due to Ms. Garcia's continued deception and attempts to avoid apprehension made matters worse for us as a community of members and [sic] volunteers.

The defendant's crime falls squarely within the class of cases to which the applicable Guidelines are addressed. Thus, consideration of the nature and circumstances of the offense

6

favors a sentence within the advisory Guidelines range.  Because the nature and circumstances of this offense also reflect blatant, repetitive, and persistent criminal behavior, this factor suggests that a sentence of incarceration is appropriate.

**B.     The history and characteristics of the defendant support the recommended sentence.**

Apart from this offense, the PSR indicates that the defendant led a reasonably productive life but Garcia chose not to provide the Probation Office with many details.  The PSR notes that the defendant had a good educational background, earning a two-year degree from a technical school in France, and held several jobs before and after her time with the GTC.

Garcia has had no other contact with the criminal justice system and, to her credit, the defendant has accepted responsibility for the offense conduct.  Although it does not diminish the egregious nature of her conduct, as reflected in the guidelines calculation the defendant does deserve some measure of credit for her acceptance of responsibility.

**C.     The recommended sentence is consistent with the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; and (C) to protect the public from further crimes of the defendant.**

The recommended sentence is appropriate to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide just punishment for the offense.  *See* 18 U.S.C. § 3553(a)(2).  The defendant's offense spanned *seven* years and resulted in a loss of over $300,000.  Her punishment must also deter others in similar positions from engaging in similar fraud and embezzlement schemes.  The defendant's sentence, therefore, should serve to deter the defendant from future criminal conduct and to warn others considering a corrupt path that the criminal law will deal harshly with those seeking to steal money – particularly those who abuse a position of trust, steal

7

from their employers, and flee from prosecution.  The question, in the government's view, is not whether incarceration is appropriate, but rather how much incarceration time is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).  The government believes that the various factors at issue in this case – in particular, the duration of the defendant's scheme, the manner and means used to execute the scheme repeatedly, and the amount of loss at issue, juxtaposed with the defendant's acceptance of responsibility and other considerations – all suggest that a sentence of 27 months of imprisonment is appropriate.  Given the egregiousness of the conduct, the government also respectfully recommends the maximum period of supervised release, *i.e.*, three years.

### D.  **Forfeiture and Restitution**

Pursuant to the plea agreement, the government respectfully requests that the defendant be ordered to pay restitution in the amount of $300,422.06 to the GTC and to forfeit a money judgment in the same amount.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, the appropriate considerations of sentencing favor the imposition of a sentence of imprisonment of 27 months' incarceration followed by three years of supervised release.  The government also respectfully requests that the Court impose appropriate employment and financial restrictions on the defendant during her period of supervised release, as referenced in the PSR.  PSR ¶ 107.  Specifically, the defendant should be restricted from securing and engaging in employment that involves unmonitored access to financial accounts or funds.

CHANNING D. PHILLIPS
Acting United States Attorney

By:     _____/s/_____
Peter C. Lallas
New York Bar No. 4290623
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 252-6879
Peter.Lallas@usdoj.gov